CHARLES MIX COUNTY BANK, Appellant, v. JOHNSON
BROTHERS LAND COMPANY, Respondent.

(159 N. W. 279.)

(File No. 3783.   Opinion filed September 9, 1916.   Rehearing denied
November 29, 1916.)

1.   Banks and Banking—Two Corporations, Stock Owned by Partner-
ship—Sale of Bank Corporation Stock by Partnership—Bank's
Money Invested—Land Company Loans—Right to Interest
After Loan Sold—Ratification by Bank of Agreement re In-
terest.

Plaintiff bank, incorporated by the parties constituting de-
fendant land company, also incorporated, the entire capital
stock of both corporations except ten shares of the bank stock
being owned by the partners, constituting the incorporators of
the land company, sued the land company for certain interest
on loans made by using the bank's funds; the ten shares
being owned by one who acted as the bank cashier.   There-
after, the land company sold all of the capital stock except
said ten shares, to a purchaser who took over the entire man-
agement of the bank, retaining the cashier under an arrange-
ment that it would pay one-half his salary, the land company
to pay the other one-half.   Prior to said stock sale, sundry
notes and mortgages owned by the bank were sold to various
parties, pursuant to an arrangement between the bank and the
land company, whereby the former was to receive the interest
thereon accruing up to the time when the loans were sold or
rediscounted, the bank being repaid the loan moneys at time of
such sales, the land company to have the principal and all
interest accruing thereafter; it appearing that, when said stock
sale was made, items of interest on the loans were not in-
voiced with the bank's assets in arriving at the bank value of
its stock, and said interest items were thereafter received by
the bank and paid over to the land company.   Held, that,
there being no evidence of any concealment or misrepresen-
tation in the sale of the bank stock, the bank, if it ever had
any right or title to said interest, had parted therewith and
was not entitled to recover; it further appearing that the bank
continued to pay said items of interest, as collected, to the land
company, up to a period several months after the cashier had
severed his connection with the bank; and the bank not only
purchased their stock with full knowledge of said agreement,
but ratified the same and acquiesced therein.

2.   Banks and Banking—Sale of Bank Stock Distinguished From
Sale of Bank Property.

The sale of all capital stock of a bank except ten shares held
by the cashier, to a purchaser who took over its entire man-

agement, was not a transfer of title of any of the bank's property; it was only a sale of such capital stock and did not affect the title to the property then belonging to the bank.

Smith, J., taking no part in the decision.

Appeal from Circuit Court, Charles Mix County. Hon. ROBERT B. TRIPP, Judge.

Action by the Charles Mix County Bank, against Johnson Brothers Land Company, to recover interest on certain mortgage loans made with plaintiff bank's money. From a judgment for defendant ,and from an order denying a new trial, plaintiff appeals. Judgment and order affirmed.

*John E. Tipton,* for Appellant.

*Ambrose B. Beck,* and *French & Orvis,* for Respondent.

POLLEY, P. J. Plaintiff, who is also appellant, is a banking corporation at Geddes, S. D. Defendant is a real estate and loan company. Both companies were incorporated by the same parties, to-wit: Ed. S., Homer W., and Frank H. Johnson, known as Johnson Bros., and both companies were incorporated at about the same time. For some time after their incorporation, Johnson Bros. owned all the capital stock of both corporations. Both corporations carried on their business in the same offices in Geddes. At some time after the incorporation of said companies—the exact dates does not appear in the record—one V. A. Welcher acquired 10 shares of the capital stock of the plaintiff company, and became, and thereafter acted as, cashier of the bank. During the month of July, 1911, Johnson Bros. sold all of the capital stock of the bank, except 10 shares, to J. H. and O. V. Meyhaus and C. M. Krebs (referred to in the record as Mayhaus Bros & Krebs), who took over the entire management of the bank, except that they retained the said Welcher, who continued to act as cashier of the bank until about the 1st of June, 1912. In addition to acting as cashier of the bank, after Johnson Bros. sold out Welcher was also to look after certain interests of theirs, and they were to pay one half of his salary and the bank the other half. While Johnson Bros. were operating the bank, certain notes and mortgages, owned by it, were sold to various parties in different parts of the country. These notes were negotiated under an arrangement whereby, when the interest thereon was paid, the defendant company was to receive a certain amount thereof.

equal, in some cases, to 1 per cent. and in others to one-half per cent. of the principal; and, in the complaint, it is alleged that the defendant—

"by its officers and agents, through the knowledge they had of plaintiff's affairs, collected  *  *  *  dollars so due this plaintiff, as aforesaid; and appropriated it to its own use and benefit."

The interest that had been paid on each individual note was made the basis of a separate cause of action. The case was tried to a jury; but, at the close of all the testimony, the trial court, upon defendant's motion, directed a verdict for defendant. From the judgment entered upon said verdict and from an order denying a motion for a new trial, plaintiff appeals.

[1] Appellant bases its right to recover upon the theory that, as the notes and mortgages involved were the property of the bank, any interest or commision that may have been reserved at the time they were negotiated also belonged to the bank.

Appellant has presented and argued 93 assignments of error, but we do not deem it necessary to consider them in detail because upon the facts as claimed by appellant, it has not shown itself entitled to recover.

Prior to the making of any of the loans evidenced by the said notes and mortgages, and when Johnson Bros. owned all the capital stock of both corporations and had entire control of all the business and affairs of both corporations, they had an agreement among themselves, to the effect that all the profits of the real estate loan business should belong to the respondent; that, if the bank's money should be used in making loans, the bank should have all the interest that accrued upon said loans so long as the bank's money was invested therein, but, so soon as a loan was sold, the money invested therein by the bank, together with the interest that had accrued to that time, should be returned to the bank and the bank should have no further interest in said loan. The loans were procured, in the first place, by the respondent company, and all commissions thereon and all interest reserved when the loans were sold were to go to the respondent. While appellant does not, in so many words, charge that this agreement and the various transactions pursuant thereto were fraudulent, its contention is, in effect, that they amounted to a fraud upon the bank. This kind of banking, of course, is not to be commended,

but it is not in violation of any statute, nor, in this case, was any one injured thereby.

At the time the above agreement was entered into, Johnson Bros. being the owners of all the stock in both companies, all profits earned by either company inured directly to their benefit. They were the only parties in any manner interested, and it was wholly immaterial to any one but themselves which of the two companies was credited with the profit. This agreement being legal, it would continue to be binding upon the bank so far as past transactions are concerned, although the capital stock changed hands and other parties became interested. Or, in other words, the bank having divested itself of all interest in the loan when the note and mortgage were sold, it was wholly immaterial to the bank what disposition was made of the interest that was earned by the loan thereafter. It is not claimed that there was any concealment or misrepresentation at the time of the sale to Mayhaus Bros. & Krebs. All of the loans described in the complaint had been sold and fully paid for before they acquired their interests. All the notes were payable at the bank, and all the items of interest involved were paid to the bank, and all paid after Mayhaus Bros. & Krebs had acquired their interest and were in the active management of the bank. As the interest on said notes was paid, the amount thereof to which Johnson Bros. were entitled, under the terms of the above agreement, was remitted to them by draft or placed to their credit in the bank. True, Welcher continued to act as cashier until about June, 1912, but it is nowhere claimed that Mayhaus Bros & Krebs were not fully advised of all that was being done in the premises; and it is a fact that they continued to pay the said items of interest, as they were collected, to Johnson Bros. up until as late as April 1, 1913, a period of some nine months after Welcher had severed his connection with the bank. These circumstances tend very strongly to show that Mayhaus Bros. & Krebs not only purchased their bank stock with full knowledge of the said agreement between appellant and respondent, but that they fully ratified the same and acquiesced therein. But there is another circumstance that tends still more strongly to show that Johnson Bros. possessed and retained the right to the said interest as it accrued. The sale of bank stock from Johnson Bros. to Mayhaus Bros. & Krebs

was made pursuant to a written contract whereby Johnson Bros. agreed to sell and Meyhaus Bros. & Krebs agreed to buy 240 of the total of 250 shares of the capital stock of the bank 'at and for the book value thereof, plus a bonus of $10,000." It was further agreed that:

"In arriving at the book value, the capital stock, surplus, undivided profits and accrued interest on all notes and bills receivable are to be added together and, from the aggregate of such amount, is to be deducted interest paid in advance on notes, figured at eight per cent. per annum, and accrued interest on certificates of deposit."

It appears that, in arriving at the book value of the stock, an invoice of the assets of the bank, as they appeared upon the books thereof, was taken, and the value of the stock equaled the aggregate value of the bank's assets. This implies also that anything that was not invoiced was not to be considered as an asset of the bank. At the time the invoice was taken, the right to the items of interest involved as they accrued constituted a valuable asset, the existence of which appeared on the books of the bank. Meyhaus Bros. & Krebs assisted in making the invoice and had access to these books. None of these items was invoiced nor taken into consideration in arriving at the value of the stock. The inference is that they did not belong to the bank, and were not regarded as an asset of the bank by any of the parties to the transaction. Of course we do not mean to imply that the mere failure to invoice an item of property, whether tangible or intangible, would divest the bank of its right to such property, if in fact it belonged to the bank; but, when, as in this case, all parties at the time of the sale and for nearly two years thereafter assumed that the property involved belonged to the respondent, the only inference is that the bank had parted with its title thereto at some previous time, if indeed it ever had any title at all.

[2] We have not overlooked the fact that the sale of Johnson Bros. to Mayhaus Bros. & Krebs was not a transfer of title of any property belonging to the bank. It was only a sale of a stipulated amount of the capital stock of the bank, and title to the property that belonged to the bank at that time was in no wise affected by such sale.

The judgment and order appealed from are affirmed.

SMITH, J., took no part in this decision.